CRAWFORD v STATE OF MICHIGAN

Docket No. 153827. Submitted September 13, 1994, at Detroit. Decided December 19, 1994, at 9:35 A.M. Leave to appeal sought.

Alan O. and Acquilla Crawford and Academy Bus Tours, Inc., brought an action in the Macomb Circuit Court against the State of Michigan, seeking to quiet title to certain real property that had been deeded to the state following a tax sale. The court, John B. Bruff, J., granted the defendant's motion for summary disposition. The court found that certain checks sent to the county treasurer's office by the Crawfords as alleged full payment for the delinquent taxes were untimely because they were received on the actual day of the tax sale, not before the day of the sale as required by statute, MCL 211.106; MSA 7.160. The plaintiffs appealed, alleging that they timely redeemed their property and that they were denied due process of law.

The Court of Appeals *held:*

1. The trial court properly concluded that the plaintiffs did not provide sufficient evidence of their payment of all delinquent taxes on or before the deadline for such payment. The evidence shows that the checks arrived at the treasurer's office on May 2, 1989, one day after the deadline. Thus, the plaintiffs' attempt to exercise their right of redemption before the tax sale was untimely. The alleged payment of back taxes was delinquent and ineffective, and the subsequent tax sale was proper.

2. The order granting summary disposition was not premature.

3. The plaintiffs were not denied due process. The tax sale was authorized.

Affirmed.

1. Evidence — Letters — Mailing Presumption.

Items properly addressed and placed in the mail are presumed to reach their destination.

References

Am Jur 2d, Evidence §§ 261-266; State and Local Taxation §§ 712, 842, 873, 904, 1004; Summary Judgment §§ 12, 26.

See ALR Index under Mail and Mailing; Summary Judgment; Taxes.

2. TAXATION — DELINQUENT TAXES — PAYMENT.

The payment of back taxes is not effective until the payment is received by the treasurer's office (MCL 21.153; MSA 3.661).

3. PRETRIAL PROCEDURE — DISCOVERY — SUMMARY DISPOSITION.

Summary disposition may be appropriate before the expiration of a discovery deadline where further discovery does not stand a fair chance of uncovering factual support for the opposing party's position.

4. TAXATION — SALE FOR DELINQUENCY — HARMLESS ERROR.

A harmless-error-type analysis applies to claims regarding non-prejudicial irregularities in form or substance with regard to a tax assessed upon any property or the sale therefor (MCL 211.99; MSA 7.153).

5. TAXATION — DELINQUENT TAXES — REDEMPTION.

The General Property Tax Act provides that the taxes on any lands returned as delinquent may be paid to the county treasurer at any time before the day of the tax sale (MCL 211.106; MSA 7.160).

*Barry Fayne,* for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Thomas J. Emery* and *Roland Hwang,* Assistant Attorneys General, for the defendant.

Before: MICHAEL J. KELLY, P.J., and BRENNAN and J. A. FULLERTON,* JJ.

MICHAEL J. KELLY, P.J. Plaintiffs appeal as of right a circuit court order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

In 1988, plaintiffs[1] owned business property in New Haven for which they owed $12,900 in prop-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Throughout this opinion we will use "plaintiffs" to refer to Alan and Acquilla Crawford, the former owners of the property at issue. Coplaintiff Academy Bus Tours, Inc., is the mortgagee of the property by virtue of an April 1991 mortgage agreement with plaintiffs.

erty taxes for the tax year 1985. In March 1988, the circuit court ordered the property to be sold at a tax sale scheduled for May 2, 1989. Pursuant to MCL 211.106; MSA 7.160, plaintiffs had the right to redeem the property by paying all delinquent taxes "to the county treasurer at any time prior to the day of sale"—in this case, on or before May 1, 1989. On April 29, 1989, plaintiffs mailed three personal checks totaling $12,900 in full payment of the 1985 taxes to the Macomb County Treasurer's Office. On that same day, plaintiffs' checking account contained only $17. However, plaintiffs deposited approximately $9,000 on May 3, 1989. The April 29 checks were received by Marilyn Baunoch, a clerk in the treasurer's office, on May 2, 1989. Baunoch requested the bookkeeping department to inquire whether there were sufficient funds to cover the checks. Plaintiffs' bank informed the treasurer's office that there were not. Baunoch then stamped the checks "void," wrote across the front of each check "per bank, no funds available 5-2-89," and returned the checks to plaintiffs on May 3, 1989. On May 2, 1989, plaintiffs' property was offered for sale as planned but, for want of other bidders, it was bid and deeded to the state.

The record reveals no attempt by plaintiffs to redeem their property after May 2, 1989.

Pursuant to MCL 211.131e(1); MSA 7.190(3)(1), plaintiffs were served with notice of a show cause hearing scheduled with the Department of Treasury on January 14, 1991, and of their thirty-day right of redemption following the hearing. The purpose of the hearing was to provide plaintiffs an opportunity to present evidence regarding why the state's deed should be set aside. MCL 211.131e(2); MSA 7.190(3)(2). Pursuant to a telephone conversation with Thomas Willard, a manager employed by

the Department of Treasury, plaintiffs' attorney filed a written request for relief in lieu of appearing at the hearing. The request stated that the tax sale was improper because plaintiffs had submitted personal checks in payment of all delinquent taxes in a timely manner. Apparently, the Department of Treasury never issued a written response to the request.

On August 23, 1991, plaintiffs filed this action to quiet title. Plaintiffs alleged that they had met all the requirements of MCL 211.106; MSA 7.160 for redeeming their property before the tax sale. In support of their claim, they filed an affidavit of Frederick Brown, a former branch manager at their bank. Brown averred that, if the treasurer's office had presented plaintiffs' three checks for payment, "they may have been honored by the bank based on the relationship of the parties and their prior custom and practice despite an overdrawn account." In November 1988, plaintiffs' account had been moved to a bank branch office not managed by Brown, but Brown "continued to approve on behalf of the bank, checking transactions based upon my knowledge of Mr. Crawford's honesty and integrity." No explanation regarding how, why, or when such inquiries or interbranch activities were initiated or implemented was offered.

Upon the filing of defendant's motion for summary disposition, plaintiffs filed additional affidavits. Plaintiff Alan Crawford averred that his bank, through its manager, Nancy Saari, agreed to notify him in the event of an overdraft and to pay the three checks submitted to the treasurer's office. The affidavit of Diana Colley, an administrative assistant in plaintiffs' business, corroborated Crawford's story.

Defendant countered with its own affidavits. Nancy Saari (now Teise), a branch manager at the

bank, averred that she was on medical leave during the time at issue but that she "would not have and did not at that time promise to contact Mr. Alan Crawford in the event of an overdraft, nor promise an accommodation by the bank for an overdraft." Bonnie Foronato, acting branch manager for the bank, averred the same. Frederick Brown clarified his earlier affidavit, stating that he no longer had authority over plaintiffs' relationship with the bank after plaintiffs' accounts were moved to another branch in November 1988.

The trial court granted defendant's motion for summary disposition on May 15, 1992. A judgment reflecting the court's order was entered on June 4, 1992.

The principal issues on appeal are whether plaintiffs timely redeemed their property under the General Property Tax Act (GPTA), MCL 211.1 *et seq.*; MSA 7.1 *et seq.*, and whether they were afforded due process of law.

Plaintiffs argue that the trial court erred in concluding that they had not provided sufficient evidence of payment of all delinquent taxes on or before the deadline of May 1, 1989. We find no error. Plaintiffs' argument rests on the applicability of their version of the "mailbox rule," which provides that items placed in the mail are presumed to arrive at their destination on the next business day. In this case, plaintiffs assert that the mailing of their checks to the treasurer's office on Saturday, April 29, 1989, warrants the presumption that the checks arrived on Monday, May 1, 1989. However, while there is authority for the presumption that items properly addressed and placed in the mail reach their destination, *Stacey v Sankovich,* 19 Mich App 688, 694; 173 NW2d 225 (1969), plaintiffs cite no authority for the presumption that such items arrive *on the next business*

*day.* There is no dispute *whether* the treasurer's office received the checks, only *when.* In this case, the only evidence addressing this issue came from defendant. Marilyn Baunoch's affidavit shows that the checks did not arrive at the treasurer's office until May 2, 1989, one day after the deadline. Payment of back taxes is not effective until received by the treasurer's office. MCL 21.153; MSA 3.661. Plaintiffs provide no evidence to show that the checks arrived at the treasurer's office before May 2, 1989. Accordingly, the trial court properly concluded that plaintiffs' attempt to exercise their right of redemption before the tax sale was untimely. Regardless of plaintiffs' alleged arrangement with their bank for overdraft checks, their payment of back taxes was delinquent and, thus, ineffective. Therefore, we need not reach the personal banking arrangements alleged by plaintiffs nor the failure to proffer "presentation" by the treasurer. MCL 21.153; MSA 3.661. The subsequent tax sale of plaintiffs' property was proper.

Plaintiffs also argue that, because Baunoch's affidavit was not presented until defendant filed its motion for summary disposition, and because discovery was incomplete at that time, the order granting defendant's motion was premature.[2] Plaintiffs contend that, given an opportunity to depose Baunoch, they might have produced evidence that their checks arrived at the treasurer's office before May 2, 1989. However, summary disposition may be appropriate before the expiration

[2] Defendant filed its motion for summary disposition on February 19, 1992, along with a notice of hearing set for March 16, 1992. Plaintiffs filed their response on March 11, 1992. Defendant submitted a supplemental brief and additional affidavits on March 24, 1992. Plaintiffs filed their response to the supplemental brief the following day. According to the October 30, 1991, discovery and mediation order, the discovery deadline was set for April 30, 1992. The trial court issued its order and opinion with regard to defendant's motion on May 15, 1992, and entered judgment on June 4, 1992.

of a discovery deadline if further discovery does not stand a fair chance of uncovering factual support for the opposing party's position. *Neumann v State Farm Mutual Automobile Ins Co,* 180 Mich App 479, 485; 447 NW2d 786 (1989). In order to avoid summary disposition, plaintiffs needed hard evidence that their checks arrived on or before May 1, 1989. We do not believe there was a fair chance that plaintiffs could persuade the affiant to make an admission clearly in their favor by flatly contradicting her prior statement regarding the date of the checks' receipt. We also note that there were at least four weeks of discovery remaining after plaintiffs received Baunoch's affidavit and raised the discovery issue. The trial court did not issue its opinion until another two weeks later. Yet, plaintiffs apparently made no effort to depose Baunoch during this period.

We also reject plaintiffs' due process argument. Plaintiffs failed to exercise their multiple rights of redemption following the sale. Regardless of the alleged procedural defects in connection with the show cause hearing on January 14, 1991, the expiration dates for plaintiffs' rights of redemption were clearly established. Under MCL 211.74; MSA 7.120, plaintiffs had until April 30, 1990 ("before the first Tuesday of May in the year following the sale") to redeem their property, at which time title vested in the state. This right of redemption was extended to November 4, 1990, pursuant to MCL 211.131c(1); MSA 7.190(1)(1) ("before the first Tuesday in November following the vesting of title in the state"). Under MCL 211.131e(1); MSA 7.190(3) (1), the redemption period was extended even further to the date on which plaintiffs were notified of the show cause hearing and, under MCL 211.131e(3); MSA 7.190(3)(3), to February 13, 1992 ("30 days following the date of hearing"). Although

plaintiffs contend that the failure of the Department of Treasury to issue its response to their request for relief at the show cause hearing tolled the running of the thirty-day redemption period following the hearing, their position is not supported by the plain language of the statute ("30 days following the date of hearing," not the date of defendant's response). Nor is their position supported by any other authority in their brief. Plaintiffs' brief is also devoid of legal support for the argument that the Department of Treasury is estopped from denying that the redemption period is tolled because the notice of the hearing set the period at thirty days following the denial of plaintiffs' request for relief. Accordingly, we deem these arguments waived. *Winiemko v Valenti,* 203 Mich App 411, 415; 513 NW2d 181 (1994).

In addition, the failure of the Department of Treasury to issue a response to plaintiffs' request for relief is also rendered harmless by virtue of our holding regarding the timeliness and effectiveness of plaintiffs' attempt to redeem before the tax sale. The arguments made in plaintiffs' written request for relief were the same as those made before the trial court and on appeal. We have determined as a matter of law that plaintiffs' attempt to redeem was ineffective. Under MCL 211.99; MSA 7.153, a harmless-error-type analysis applies to nonprejudicial irregularities in form or substance:

> No tax assessed upon any property, or sale therefor, shall be held invalid by any court of this state on account of any . . . irregularity, informality, or omission, or want of any matter of form or substance in any proceeding that does not prejudice the property rights of the person whose property is taxed . . . . The absence of any record of any proceeding or proceedings, or the omission of

any mention in any record of any vote or proceeding, or of mention of any matter in any statement or certificate that should appear therein under the provisions of any law of this state, shall not affect the validity of any proceeding, tax, or title depending thereon, provided the fact that such vote or proceeding was had or tax authorized is shown by any other record, statement or certificate made evidence by the terms of this act or any other law of this state.

In this case, the evidence clearly showed that the tax sale was authorized. Courts have no authority to turn back the clock more than five years so that plaintiffs can redeem property that they had ample opportunity to redeem under the GPTA.

Affirmed.