*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAMELA JOY LEE JOHNSON,

        Plaintiff-Appellant,

v

EDGAR JOHNSON III,

        Defendant-Appellee.

UNPUBLISHED
April 6, 2023

No. 361277
Clinton Circuit Court
LC No. 10-022282-DM

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

This child-custody dispute returns to us for a third time. This appeal primarily involves the trial court's order granting sole physical and legal custody of the parties' minor children to defendant-father and suspending plaintiff-mother's parenting time following an evidentiary hearing. Plaintiff argues that that she did not receive proper notice of this hearing, that the trial court erred in several of its best-interest findings, and that the trial court erroneously suspended her parenting time. Despite plaintiff's egregious conduct throughout this case, the trial court committed clear legal error in its consideration of the children's reasonable preferences and made several best-interest findings against the great weight of the evidence. Therefore, we must vacate the trial court's ordering granting custody to defendant and remand for a new evidentiary hearing to consider the children's best interests.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To understand the issues before us on this appeal, we begin with the history of child-custody litigation between the parties.

## A. PREVIOUS APPEALS

The first appeal to this Court stemmed from plaintiff's challenge to the trial court's parenting time order, entered in conjunction with an order granting plaintiff's motion to change the children's domicile from Michigan to Virginia. *Johnson v Johnson*, unpublished per curiam

-1-

opinion of the Court of Appeals, issued August 8, 2017 (Docket No. 336827), p 1. This Court summarized the case's background:

> The parties were divorced in 2011 and have joint legal custody of their two children. Plaintiff has primary physical custody of the children, but defendant has traditionally had substantial parenting time. In 2016, plaintiff was called for active duty as a medical review officer in Maryland and Virginia. She filed a motion to change the children's domicile from Michigan to Virginia, and to modify the parties' parenting time schedule to one similar to what had been in place a few years earlier when plaintiff resided in the state of Washington. Following an evidentiary hearing before a referee, the trial court granted plaintiff's motion to change the children's domicile to Virginia and adopted the referee's recommended parenting time schedule. [*Id.*]

The trial court granted parenting time to defendant for the entirety of each Thanksgiving, Christmas, spring, and summer school break, and plaintiff was ordered to pay all transportation costs. *Id.* at 1-2. Plaintiff was also required to make the children available three days per week for video calls with defendant. *Id.* at 2. Plaintiff argued that this parenting time schedule was unfair and not in the children's best interests, but this Court determined that it was supported by the evidence; as such, this Court affirmed. *Id.* at 2-5.

A few years later, this dispute returned to this Court. *Johnson v Johnson*, 329 Mich App 110; 940 NW2d 807 (2019). In this second appeal, this Court summarized the pertinent facts as follows:

> [D]efendant asserts that between January 11, 2017, and May 21, 2018, plaintiff failed to facilitate Skype parenting-time sessions between defendant and the children, to provide the minor children to him for Thanksgiving break, to provide the children to him for Christmas break, to provide the children for defendant's summer parenting time, and to provide him with medical information regarding the children or information about their well-being. On multiple occasions, the Friend of the Court (FOC) petitioned the court to issue an order to show cause for why plaintiff should not be held in contempt for violating the parenting-time schedule. [*Id.* at 115.]

Plaintiff missed the first scheduled show cause hearing, and she submitted a letter before the second date requesting a stay of proceedings in accordance with the rights and protection offered to her under the Servicemembers Civil Relief Act (SCRA), 50 USC 3901 *et seq*. *Id.* at 115-116. The trial court ultimately denied plaintiff's stay request and held plaintiff in contempt for failing to appear at several hearings. *Id.* at 117. The trial court also ordered that plaintiff transfer the minor children to defendant and directed that defendant would have temporary physical custody of the children. *Id.* at 118. On appeal, this Court affirmed the trial court's denial of a stay under the SCRA. *Id.* at 125. But this Court also held that the trial court erred by modifying the custody order without first conducting an evidentiary hearing to consider the children's best interests. *Id.* at 131-132. Accordingly, this Court reversed the trial court's order awarding defendant temporary placement of the children. *Id.* at 132.

## B. CURRENT APPEAL

In July 2021, defendant filed a motion for change of custody, arguing that plaintiff had completely cut off contact between him and the children. Defendant requested that the trial court grant him full physical and legal custody of the children. The proof of mailing indicated that the motion, and an order scheduling a motion hearing, was sent to plaintiff at her last known address. At the motion hearing, plaintiff was not present, and the trial court indicated that plaintiff received proper notice. The trial court found that proper cause existed to reconsider the custody order and set the matter for an evidentiary hearing. Notice of the evidentiary hearing was served to plaintiff by mail at her last known address.

Plaintiff again failed to appear at the evidentiary hearing, and defendant's counsel stated that she had verified with the FOC that the address used to serve plaintiff with the notice of hearing was the last address that the FOC had on file. The trial court proceeded with the hearing, and the only evidence presented was defendant's testimony. Defendant testified that he had not physically seen the children since 2016 when they moved to Virginia, and he had not been able to speak with the children since November 2017 when plaintiff stopped appearing for defendant's Skype visits with the children. Defendant explained that he had filed several parenting time complaints and that plaintiff failed to appear at numerous show-cause hearings, leading to the issuance of bench warrants. In defendant's view, plaintiff "never fully committed to the joint legal custody agreement" and tried to "undermine" defendant as a father to the children. Considering plaintiff's obstructive tactics, defendant believed that receiving custody of the children was the only way he could have a relationship with them.

At the conclusion of the evidentiary hearing, the trial court found that it was in the best interests of the children for defendant to have sole legal and physical custody. Of the 12 best-interest factors, the court found that nine factors favored defendant and that the remaining three factors were neutral. The primary focus of the trial court's analysis was plaintiff's chronic failure to comply with court orders or appear at any hearings. In addition, the trial court suspended plaintiff's parenting time until she appeared before the court and erased defendant's child support obligation. The trial court entered an order memorializing these decisions in November 2021.

In February 2022, plaintiff filed a motion for relief from judgment and a stay of proceedings. She alleged that she did not receive timely notice of the evidentiary hearing and did not know about the court's custody order until January 2022. After the trial court scheduled a hearing to consider the motion, plaintiff moved to appear via videoconferencing technology. Five days before the hearing, plaintiff's attorney filed a motion to withdraw, and the day before the hearing, the court denied plaintiff's motion to appear remotely. Plaintiff did not appear in-person at the hearing, despite her attorney requesting that she appear, and the court granted plaintiff's attorney's motion to withdraw. The court then denied plaintiff's motion for relief from judgment.

This appeal followed by delayed leave granted.[1]

## II. STANDARDS OF REVIEW

Three distinct standards of review apply in child-custody disputes. "All custody orders must be affirmed on appeal unless the trial court committed a palpable abuse of discretion, made findings against the great weight of the evidence, or made a clear legal error." *Mitchell v Mitchell*, 296 Mich App 513, 517; 823 NW2d 153 (2012), citing MCL 722.28. Orders concerning parenting time are reviewed under these same standards of review. *Luna v Regnier*, 326 Mich App 173, 179; 930 NW2d 410 (2018). The palpable abuse of discretion standard, which applies to the trial court's ultimate decision on a custody award, is only met when the decision is "palpably and grossly violative of fact and logic." *Dailey v Kloenhamer*, 291 Mich App 660, 664-665; 811 NW2d 501 (2011) (quotation marks and citation omitted). Factual findings, including the trial court's findings on the statutory best-interest factors, are against the great weight of the evidence only when "the evidence clearly preponderates in the opposite direction." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020) (quotation marks and citation omitted). Finally, questions of law are reviewed for clear legal error, which exists when the trial court "incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted).

Additionally, we review a trial court's decision on a motion for relief from judgment for an abuse of discretion. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). But whether a party was denied due process presents a question of constitutional law, which we review de novo. *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014).

## III. ANALYSIS

Plaintiff raises several claims of error with respect to the trial court's orders granting defendant's motion for a change in custody, suspending plaintiff's parenting time, and denying plaintiff's motion for relief from judgment.

## A. NOTICE OF EVIDENTIARY HEARING

First, plaintiff argues that the trial court erred by failing to ensure that she was served electronically in accordance with MCR 2.107(G).

In general, issues raised before the trial court are preserved for appeal. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). "Furthermore, so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Id*. at 228. Plaintiff argued below in her motion for relief from judgment that she did not receive notice of the evidentiary hearing. Although she did not allege a violation of MCR 2.107(G), we consider her argument on appeal a more fully developed version of the argument raised below. Therefore, the issue is preserved.

---

[1] *Johnson v Johnson*, unpublished order of the Court of Appeals, entered October 3, 2022 (Docket No. 361277).

-4-

MCR 2.107 governs service of process, and MCR 2.107(A)(1) provides that "every party who has filed a pleading, an appearance, or a motion must be served with a copy of every document later filed in the action." The proof of service for the notice of the evidentiary hearing indicated that plaintiff was served by first-class mail at her last known address. Mail is a permissible form of service under MCR 2.107(C). Still, plaintiff argues that MCR 2.107(C) has been superseded by MCR 2.107(G). Subrule G was added to MCR 2.107 by Administrative Order No. 2020-08, 507 Mich xcii (2021), effective July 26, 2021, and provides in relevant part:

> Notwithstanding any other provision of this rule, until further order of the Court, all service of process except for case initiation must be performed using electronic means (e-Filing where available, email, or fax, where available) *to the greatest extent possible*. [Emphasis added.]

Plaintiff argues that the trial court, by failing to serve her using electronic means, violated MCR 2.107(G).[2] Beyond plaintiff's bare assertion that defendant and the FOC had plaintiff's e-mail address, there is no evidence suggesting that these individuals, or the trial court, even had her e-mail address. Courts are only required to use electronic means of service "to the greatest extent possible." MCR 2.107(G). The record before us is insufficient to establish that electronic service in this case was possible. Thus, plaintiff has not shown that the trial court violated MCR 2.107(G).

Further, plaintiff does not allege that the mailing address used to complete service was incorrect. In fact, she acknowledges that in January 2022, she suddenly received defendant's motion to change custody, notices for all related hearings, and the trial court's order changing custody in the mail. Plaintiff claims "the reason for the delay is unknown." Again, plaintiff has produced no evidence in support of these assertions. Michigan courts recognize a "presumption that items properly addressed and placed in the mail reach their destination." *Crawford v Michigan*, 208 Mich App 117, 121; 527 NW2d 30 (1994). Given the absence of "evidence that the [mail] was not received," we have no basis upon which to conclude that plaintiff has rebutted this presumption. *Goodyear Tire & Rubber Co v Roseville*, 468 Mich 947, 947; 664 NW2d 751 (2003). Accordingly, we find no merit to this argument.

## B. CUSTODY DETERMINATION

Plaintiff next argues that trial court erred by changing the existing custody order. She contends that the trial court's overall best-interest analysis was not based on admissible evidence, and more specifically, she claims that the court's findings on several best-interest factors were against the great weight of the evidence.

Where an established custodial environment exists, a trial court may not change the established custodial environment of the children "unless there is presented clear and convincing evidence that it is in the best interest of the child[ren]." *LaFleche v Ybarra*, 242 Mich App 692,

---

[2] We note that defendant's motion for change in custody was served on plaintiff before MCR 2.107(G) took effect, but subsequent notices of hearings were served on plaintiff by mail after the rule's effective date.

696; 619 NW2d 738 (2000). "[T]he child[ren]'s established custodial environment is the status quo, so in order to modify it the court must find by clear and convincing evidence that the change is in the child[ren]'s best interests when compared to the status quo." *Griffin v Griffin*, 323 Mich App 110, 123; 916 NW2d 292 (2018). It is undisputed that the children had an established custodial environment with plaintiff in Virginia. Thus, that environment may not be disrupted "except on a showing, by clear and convincing evidence, that such a disruption is in the children's best interests." *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001).

"A trial court must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil*, 332 Mich App at 244. MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

"This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

Initially, plaintiff contends that the trial court's best-interest findings were "based not on properly admitted evidence, but on the absence of evidence presented by" plaintiff. We disagree that the trial court's findings rested on inadmissible evidence. Plaintiff's argument in this regard simply seems to be frustration with the trial court's reliance on a one-sided presentation of evidence. Of course, the reason the trial court only heard testimony from defendant was because plaintiff failed to appear. The trial court's findings generally rested on admissible evidence presented through defendant's testimony, and the "absence of evidence" from plaintiff merely highlighted that defendant's testimony was uncontradicted. Therefore, plaintiff's argument lacks merit.

More specifically, plaintiff challenges the trial court's findings on best-interest factors (a), (d), (h), (i), and (k). We address each in turn.

**(a) The love, affection, and other emotional ties existing between the parties involved and the children.**

The trial court found that Factor (a) favored defendant, explaining in relevant part:

[W]hile as [defendant] indicated the normal bond has gone between himself and his two children, the court finds that, as he testified, when he did have the benefit of seeing his children, he showed them love. He parented like a normal parent. . . . The court finds that the love and other emotional ties . . . favors the father at this point because the court had not heard—has not heard today any testimony from [plaintiff], who the court notes was given notice at her last known address and failed to appear for the hearing today.

The trial court's finding that Factor (a) favored defendant was against the great weight of the evidence. Factor (a) considers the love, affection, and emotional ties "existing" between the children and the parties, MCL 722.23(a), meaning the court must look to the ties as they exist at the evidentiary hearing, not merely the parent's history with the child. See *McRoberts v Ferguson*, 322 Mich App 125, 136; 910 NW2d 721 (2017) ("Plaintiff's argument focuses on defendant's history with the child, but Factor (a) calls for the court to examine the 'existing' 'ties' between the parent and child."). Defendant testified about his relationship with his children but admitted that the "bond is gone" between him and the children. While the trial court was entitled to consider plaintiff's harmful influence on defendant's severed bond with the children for purposes of Factor (a), see *Fletcher v Fletcher*, 229 Mich App 19, 24-25; 581 NW2d 11 (1998), the evidence clearly preponderated against finding that this factor favored defendant. At minimum, the trial court

should have found that Factor (a) favored neither party because defendant did not have an "existing" bond with the children while there was no evidence pertaining to plaintiff's emotional ties with the children.

**(d) The length of time the children have lived in a stable, satisfactory environment, and the desirability of maintaining continuity.**

The trial court found that Factor (d) favored defendant, stating the following:

We don't have any testimony on the record regarding the stability of the environment that the children have been living in since 2016. The court has no idea because [plaintiff] did not present that testimony today, what type of environment the children are even living in but what testimony was presented today was testimony by [defendant] where he indicated, numerous times during his testimony, that the children need stability and that he's able to provide that in his home in Warren that he owns and that he has that desire as well is to [sic] maintain a stable, secure environment for the children.

The trial court's finding that Factor (d) favored defendant was against the great weight of the evidence. The court's determination cannot be reconciled with its own findings pertaining to this factor. As the court recognized, the children had been living exclusively with plaintiff for approximately five years at the time of the hearing. While there was no evidence about the stability of the custodial environment plaintiff provided when defendant was cut off from contact with his children, there was also no evidence that moving the children from Virginia and making them live with defendant would support their stability. The "desirability of maintaining continuity" necessarily favored the status quo. MCL 722.23(d). Thus, the great weight of the evidence clearly preponderated against finding that Factor (d) favored defendant. Taken together, the available evidence indicated that Factor (d) should favor plaintiff or remain neutral.

**(h) The home, school, and community record of the children.**

The trial court found that Factor (h) strongly favored defendant. The court explained:

We don't know what the current school record of the children are. We don't even know what school they attend because [plaintiff] is not here to provide that testimony but what we do know is that [defendant] is willing and able to enroll the children in school in the Warren area, whether it be parochial school, private school, or public—local public school and that [defendant] is willing to facilitate their learning and their transportation to and from school. He also adamantly stated that the children would be involved in extra-curricular activities at the school, wherever they attend . . . . The court also notes that with regard to this factor . . . that [defendant] testified that he has an extended family in the Warren area and he intends to have the children re-engage with his relatives, that he intends to have children reconnect with their cousins and enjoy those relationships, attend family reunions with extended family members and so the court finds that this factor strongly favors [defendant] because of his ties to the community and family . . . . Meanwhile, he did testify that he believes [plaintiff] is kind of on her own with the

children and her—in the state of Virginia, does not have an extended family there and so as—as stated—and we don't know what the school record is at this point.

The trial court's finding that Factor (h) strongly favored defendant was against the great weight of the evidence because it was unsupported by the information before the court. Simply put, the trial court heard no evidence about the children's home, school, and community record over the preceding five years. The court spoke extensively about what *could* be available to the children with their father in the Warren area, but that offered no insight into the children's actual home, school, and community record since they moved to Virginia. Therefore, the court did not have an evidentiary basis upon which to find that this factor favored either party.

**(i) The reasonable preference of the children, if the court considers the children to be of sufficient age to express preference.**

The trial court found that the children were of a sufficient age to express a custodial preference, but concluded that Factor (i) was neutral because the court had no information or ability to determine the children's preference. The court committed clear legal error by changing the children's custodial environment without any information about the children's reasonable preferences.

Multiple published opinions have expanded upon the burden imposed upon the trial courts to fulfill the mandate of Factor (i). In *Bowers v Bowers*, 190 Mich App 51, 55; 475 NW2d 394 (1991), the trial court did not consider the preferences of the six- and nine-year-old children because it did not believe they were old enough to express a preference. This Court disagreed with the trial court's assessment of their age and concluded that the "court's failure to interview the children was error requiring reversal." *Id*. at 55-56. The trial court was instructed to consider the children's preferences at a new best-interest hearing on remand. *Id*. at 56. This Court discussed *Bowers* when it decided *Kubicki v Sharpe*, 306 Mich App 525, 545; 858 NW2d 57 (2014). In that case, the trial court did not consider the child's preference because "[t]he parties did not want the [c]ourt to interview the child." *Id*. at 544 (quotation marks omitted). This Court, quoting *Bowers*, determined that this error warranted vacatur, and the case was remanded for a new best-interest hearing. *Id*. at 544-545. This Court clarified the reach of its holding in *Kubicki* when it decided *Maier v Maier*, 311 Mich App 218, 224; 874 NW2d 725 (2015). This Court explained that "*Kubicki* did not announce a new legal mandate that every child over a certain age be interviewed to ascertain a reasonable preference." *Maier*, 311 Mich App at 224. Rather, "*Kubicki* highlighted the standing principle that a court may not abrogate its responsibility to consider each of the enumerated best-interest child custody factors on the basis of a stipulation of the adults in a case" because "[t]he right to have a reasonable preference considered attaches to the best interests of the child, not to the rights of the contestants in the custody battle." *Id*. "[A]n interview is merely one avenue from which to adduce a child's capacity to form a preference," and it is not the only manner by which the trial court can make a factual finding about the children's reasonable preference. *Id*. at 225.

In this case, the trial court committed clear legal error by changing the children's custodial environment without any information on their reasonable preferences. The children, ages 15 and 12 at the time of the evidentiary hearing, are of a sufficient age to express a preference and have a right to have their voices heard in the process. While plaintiff's failure to comply with court orders

was the reason the court could not ascertain the preferences of the children, the children's right to express those preferences cannot be taken away as a result of their mother's inexplicable conduct. As this Court explained in *Maier* and *Kubicki*, the right of the children to have their preferences considered was not plaintiff's to squander. See *Maier*, 311 Mich App at 224. Just as the parents in *Kubicki*, 306 Mich App at 544-545, could not waive the child's right to express a preference by stipulation, plaintiff could not waive the children's rights to express a preference by her failure to appear in court. Therefore, the court's decision to grant defendant's motion to change custody without having any information about the children's preferences was clear legal error. See *Bowers*, 190 Mich App at 56. While we certainly do not fault the trial court for plaintiff's absence, and thus the absence of evidence on the children's reasonable preferences, the ultimate inquiry in a custody determination is the children's best interests. The trial court could not fulfill its statutory duty, and should not have proceeded to change the children's custodial environment, without any ability to ascertain the children's preferences. On remand, proper consideration—and if necessary, additional efforts to procure plaintiff's appearance—must be made to gather information on this factor.

**(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the children.**

The trial court found that Factor (k) was neutral because defendant testified that domestic violence was not an issue. On appeal, plaintiff alleges that this finding was against the great weight of the evidence because defendant admitted that Child Protective Services (CPS) investigated him for violence and child pornography. The trial court's finding was not against the great weight of the evidence. At the evidentiary hearing, defendant testified that plaintiff made false allegations about him, including reporting him to CPS after he photographed their daughter playing with bubbles in the bathtub. Defendant testified that all accusations were unsubstantiated or summarily dismissed. The trial court heard no contrary evidence and, thus, did not err by finding that Factor (k) was neutral.

In sum, the trial court's findings on Factors (a), (d), and (h) were against the great weight of the evidence, and the trial court committed clear legal error when applying Factor (i). With good reason, the trial court placed heavy emphasis on plaintiff's misconduct and disregard of the court's orders over several years, as it was entitled to do under Factor (l), MCL 722.23(l). We sympathize with the trial court's frustration over plaintiff's culpable conduct and how that behavior has impacted defendant's relationship with his children. That said, modifying the children's custodial environment should only be done if in the children's best interests and not as a remedy for a party's misconduct. Considering the sum of the trial court's errors, we must vacate the trial court's order granting defendant's motion for a change of custody and remand for a new best-interest hearing. See *Kubicki*, 306 Mich App at 545. At this hearing, the trial court must consider all relevant, up-to-date information on the parties' and children's circumstances as they relate to the best-interest factors. See *Griffin*, 323 Mich App at 124 n 10. We urge the trial court to exercise any and all measures within its legal authority to ensure plaintiff's attendance, whether remotely or in-person, at this hearing.

C.  SUSPENSION OF PARENTING TIME

Plaintiff also argues that the trial court erred by suspending her parenting time.  MCL 722.27a(3) provides that "[a] child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health."  The trial court failed to acknowledge this provision or otherwise address how plaintiff's parenting time impacted the physical, mental, or emotional health of the children.  Instead, in suspending plaintiff's parenting time, the trial court considered several factors under MCL 722.27a(7).  This provision deals with "determining the frequency, duration, and type of parenting time to be granted," not with the suspension of parenting time.  MCL 722.27a(7).  Because the trial court failed to address whether parenting time with plaintiff endangered the children, we must also vacate the order suspending plaintiff's parenting time.[3]

D.  REMOTE PARTICIPATION IN MOTION HEARING

Finally, plaintiff contends that trial court violated her right to due process by denying her motion to appear remotely the day before the hearing on her motion for relief from judgment.  Because we have granted plaintiff relief on her challenge to the change of custody order, it is unnecessary to address this issue.  But considering plaintiff's repeated failures to appear at out-of-state court hearings, the issue of remote participation is likely to recur on remand.[4]  For purposes of judicial efficiency, therefore, we exercise our discretion to address plaintiff's claim of error.

"Due process requires that a party receive notice of the proceedings against it and a meaningful opportunity to be heard."  *Sandstone Creek Solar, LLC v Benton Twp*, 335 Mich App 683, 712; 967 NW2d 890 (2021).  "[N]otice must be reasonably calculated to apprise interested parties of the action and to provide them an opportunity to be heard."  *Sidun v Wayne Co Treasurer*, 481 Mich 503, 515; 751 NW2d 453 (2008) (quotation marks and citation omitted).

Approximately two weeks before the hearing on plaintiff's motion for relief from judgment, plaintiff filed a motion to appear via videoconferencing technology.  The trial court denied the motion without explanation the day before the hearing.  Making matters worse, plaintiff's counsel had moved to withdraw days earlier.  At the scheduled hearing, plaintiff was not present.  The trial court granted the motion to withdraw and subsequently denied the motion for relief from judgment, explaining in part:

---

[3] It is clear from the record that the trial court was frustrated with plaintiff's failure to follow court orders and appear for hearings, and her refusal to grant contact between defendant and his children.  Suspension of parenting time cannot be used as a penalty to punish even a recalcitrant parent.

[4] In fact, plaintiff has filed an application for leave to appeal in Docket No. 364740 from the trial court's recent order denying plaintiff's motion to appear remotely on her motion to recalculate child support.  We express no opinion on the arguments raised by plaintiff in that application and whether the trial court may require plaintiff to appear in-person.

[Plaintiff] was required to be in court today to present her case, to present her arguments. She's not here. So the court deems her—her appearance—her decision not to appear today to be a voluntary decision on her part and contrary to what this court's order was.

Under these unusual circumstances, the last-minute denial of plaintiff's request to appear remotely combined with the withdrawal of her attorney deprived her of a meaningful opportunity to be heard. The trial court denied plaintiff's request to appear remotely the day before the hearing. Assuming plaintiff had notice of the order requiring her to attend the hearing in-person, it would have been incredibly burdensome for her to arrange to travel from Virginia to Michigan on one day's notice. Additionally, the effect of the trial court's decision granting counsel's motion to withdraw left plaintiff without any representation at the hearing. Plaintiff did not have an opportunity to obtain new counsel, and nobody represented her interests at the hearing. As such, plaintiff did not have a meaningful opportunity to be heard with respect to her motion for relief from judgment. If not for our decision vacating the trial court's custody order, plaintiff would be entitled to relief on this additional basis.

IV. CONCLUSION

We vacate the trial court's order granting sole custody of the children to defendant and suspending plaintiff's parenting time. We remand for the trial court to hold a new evidentiary hearing to determine whether a change in custody is in the children's best interests. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett