*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MIDWAY NORTH LLC and SIGN SCREEN, INC.,

Plaintiffs-Appellants,

UNPUBLISHED
March 14, 2024

v

WEXFORD COUNTY TREASURER, WEXFORD
COUNTY, and DUSTIN KEARNEY,

Defendants-Appellees.

No. 365351
Wexford Circuit Court
LC No. 2021-030066-CH

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Plaintiffs Midway North LLC (Midway) and Sign Screen Inc (SSI) appeal by right the trial court's final order granting defendants Wexford County and the Wexford County Treasurer's (Wexford) motion for summary disposition, and defendant Dustin Kearney's motion for summary disposition. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Midway purchased property located at 1989 South Mackinaw Trail, Cadillac, under land contract and orally leased it to SSI, but failed to pay property taxes for multiple years and lost the property through tax forfeiture and tax foreclosure by Wexford. Midway and SSI sued defendants alleging that Wexford failed to provide Midway constitutionally adequate notice of the tax forfeiture and foreclosure, and of its right to claim excess proceeds from the foreclosure sale, and that Kearney, who purchased the property from Wexford, wrongfully entered the premises and converted or disposed of SSI's personal property. Defendants answered and later moved respectively for summary disposition under MCR 2.116(C)(10).

Wexford argued that it satisfied all requirements under the applicable provisions of the General Property Tax Act, specifically, MCL 211.78 *et seq*. (GPTA), provided plaintiffs constitutionally sufficient notice, and provided plaintiffs constitutionally sufficient opportunities for plaintiffs to apply for the excess proceeds following the foreclosure sale. Wexford supported its motion with documentation of numerous notices over the course of two years that complied with the GPTA. Wexford also relied on the judgment of foreclosure for Wexford entered by the

-1-

circuit court on February 19, 2021, in the judicial foreclosure action, which awarded Wexford title to the property unless the property was redeemed by payment of all forfeited delinquent taxes, interest, penalties, and fees. Midway did not redeem the property. Wexford asserted that Midway's registered address was and remained the 1989 South Mackinaw Trail, Cadillac address. Wexford listed the dates and types of notices provided to Midway respecting its delinquent taxes. It also specified the dates and action it took regarding determining Midway's address, providing notice by publication, notice of hearing under MCL 211.78j and 211.78k, dates of publications of foreclosure, payment deadline notices, and sending of the form for completion if Midway intended seeking any excess funds from the foreclosure sale. Wexford also provided evidence that it visited the property to inform the occupant, if any, and finding the property abandoned and unoccupied posted notice on the property, and that it also published notice in the local newspaper. Wexford explained that the tax foreclosure sale occurred on August 2, 2021, at which Kearney bought the property for the highest bid. Wexford explained that MCL 211.78 *et seq*., governed forfeiture and foreclosure of property for delinquent taxes and set the constitutional minimum due-process requirements and described the steps that Wexford took to give Midway and its registered agent, Gilbert McCord, notice at the address registered with the Michigan Department of Licensing and Regulatory Affairs (LARA). Wexford asserted that Midway received notice but did nothing. Plaintiffs opposed the motion. They asserted that Midway never received tax bills or notices regarding the tax forfeiture, tax foreclosure, tax foreclosure sale, or about the excess proceeds from the sale. Plaintiffs argued that all mailed notices were not delivered to the property but returned as undeliverable. Plaintiffs contended that that triggered Wexford's obligation to take additional steps to provide Midway notice by sending notice to McCord and Midway at other property addresses in the county. Plaintiffs argued that Wexford failed to provide any notice and deprived them of due process.

Kearney argued in his summary disposition motion that he bought the property from Wexford at auction on August 2, 2021, and had no liability to plaintiffs because the property had been listed as abandoned and he purchased it in good faith believing such, and when he went to the property he found the building in disrepair and poor condition, debris indicating abandonment, and the land unkempt. He explained that, when he went to the property on August 14, 2021, McCord arrived and called the police and tried to have him removed but the police checked with the county and learned that Kearney owned the property, so the police removed McCord from the premises. Kearney asserted that he did not evict plaintiffs or commit any wrongdoing because plaintiffs had no right of possession, the land was abandoned, and plaintiffs had no viable claims for conversion or claim and delivery. Kearney contended that plaintiffs' abandonment of the property and failure to check their mail and pay property taxes did not enable them to sue Kearney, a bona fide good-faith purchaser of the property. Plaintiffs opposed Kearney's motion arguing that Kearney wrongfully evicted plaintiffs from the property and unlawfully interfered with their possessory interest, and that Kearney's forceful removal of plaintiffs from the property violated MCL 600.2918[1] entitling them to damages. Plaintiffs argued that they had not abandoned the

---

[1] MCL 600.2918 provides:

> (1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force,

-2-

property and did not know of the tax foreclosure and sale, and Kearney could not prove abandonment.

Respecting both summary disposition motions, plaintiffs argued that many genuine issues of material fact existed barring summary disposition of their claims. The trial court held a hearing on the motions and later entered a final order granting both Wexford's and Kearney's motions. In its order, the trial court listed the GPTA's requirements and noted the ways in which Wexford satisfied its statutory obligations. The court also stated that MCL 211.78t placed the initial burden on claimants of excess proceeds to initiate the process by filing a notice of intent by July 1, 2021, but no such notice had ever been filed by plaintiffs or any representative of them. Because no claimant did so, Wexford had no further obligation under the GPTA regarding the excess proceeds. The court ruled that Wexford sufficiently met its due-process obligations. Respecting Kearney's motion, the court ruled that the evidence established that the premises were abandoned. The court concluded that Kearney had no evidence or knowledge of any lease and no reason to know of any oral lease or interest of SSI in any property at the premises. The court ruled that Kearney had a good-faith belief that the property had been abandoned. The court also concluded, based on the evidence, that plaintiffs offered nothing more than speculation and provided no evidence that Kearney removed, destroyed, or damaged any property. The trial court pointed out that plaintiffs

---

is entitled to recover 3 times the amount of his or her actual damages or $200.00, whichever is greater, in addition to recovering possession.

(2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner is entitled to recover the amount of his or her actual damages or $200.00, whichever is greater, for each occurrence and, if possession has been lost, to recover possession. Subject to subsection (3), unlawful interference with a possessory interest includes 1 or more of the following:

(a) Use of force or threat of force.

(b) Removal, retention, or destruction of personal property of the possessor.

(c) Changing, altering, or adding to the locks or other security devices on the property without immediately providing keys or other unlocking devices to the person in possession.

(d) Boarding of the premises that prevents or deters entry.

(e) Removal of doors, windows, or locks.

(f) Causing, by action or omission, the termination or interruption of a service procured by the tenant or that the landlord is under an existing duty to furnish, which service is so essential that its termination or interruption would constitute constructive eviction, including heat, running water, hot water, electric, or gas service.

(g) Introduction of noise, odor, or other nuisance.

had to provide proof when faced with a summary disposition motion and had the obligation under MCR 2.116(G)(4) to support their causes of action but failed to do so. Therefore, the trial court ruled that no genuine issue of material fact existed as to Counts 2, 3, and 4. Accordingly, the court granted Wexford's motion and granted Kearney's motion, denied plaintiffs the relief they requested, and disposed of the entire case. Plaintiffs now appeal.

## II. STANDARDS OF REVIEW

We review de novo questions of law, including issues of constitutional and statutory construction. *In re Petition by Wayne County Treasurer*, 478 Mich 1, 6; 732 NW2d 458 (2007). We also review de novo whether a party has been afforded due process. *Rental Properties Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014).

"This Court reviews de novo a trial court's decision regarding a motion for summary disposition." *Sidun v Wayne Co Treasurer*, 481 Mich 503, 508; 751 NW2d 453 (2008) (citation omitted). "This Court also reviews constitutional issues de novo." *Id*. (citation omitted). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

## III. ANALYSIS

### A. ADEQUACY OF NOTICE – DUE PROCESS

Plaintiffs first argue that the trial court erred by ruling that Wexford complied with the due-process requirements respecting the tax forfeiture, tax foreclosure and sale of the property because genuine issues of material fact exist whether Wexford's attempts at notice were constitutionally sufficient and Wexford failed to take reasonable additional steps to provide notice. We disagree.

Under the GPTA, a governmental unit may seize and sell real property to "satisfy the unpaid delinquent real-property taxes as well as any interest, penalties, and fees associated with the foreclosure and sale of [the property]." *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 474; 952 NW2d 434 (2020); see also MCL 211.78a(1). Under the tax-foreclosure process, "tax-delinquent properties are forfeited to the county treasurers; foreclosed on after a judicial foreclosure hearing; and, if not timely redeemed, sold at a public auction." *Id*. at 442. Property owners have a constitutional right to the due process of law in proceedings for tax foreclosure. *Sidun*, 481 Mich

at 509. "People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking." *Jones v Flowers*, 547 US 220, 234; 126 S Ct 1708, 164 L Ed2d 415 (2006).

MCL 211.78(2) provides:

It is the intent of the legislature that the provisions of this act relating to the return, forfeiture, and foreclosure of property for delinquent taxes satisfy the minimum requirements of due process required under the constitution of this state and the constitution of the United States but that those provisions do not create new rights beyond those required under the state constitution of 1963 or the constitution of the United States. The failure of this state or a political subdivision of this state to follow a requirement of this act relating to the return, forfeiture, or foreclosure of property for delinquent taxes shall not be construed to create a claim or cause of action against this state or a political subdivision of this state unless the minimum requirements of due process accorded under the state constitution of 1963 or the constitution of the United States are violated.

In *Sidun*, 481 Mich at 508-512, our Supreme Court explained the constitutional minimum due process-requirement:

The Due Process Clause of the Michigan Constitution states: "No person shall be . . . deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. The corresponding provision of the United States Constitution is applicable to Michigan through the Fourteenth Amendment, and provides in part, "nor shall any person . . . be deprived of life, liberty, or property, without due process of law." US Const, Am V.

\* \* \*

Proceedings that seek to take property from its owner must comport with due process. A fundamental requirement of due process in such proceedings is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). Interested parties are "entitled to have the [government] employ such means 'as one desirous of actually informing [them] might reasonably adopt' to notify [them] of the pendency of the proceedings." *Dow v Michigan*, 396 Mich 192; 240 NW2d 450 (1976), quoting *Mullane*, supra at 315. That is, the means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice. *Mullane*, supra at 315. However, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, [547 US] at 226. In this case, the county treasurer attempted to notify plaintiff of the foreclosure proceedings, but actual notice was not achieved. Thus, the issue is whether the

methods employed by the county treasurer were sufficient to satisfy due-process requirements.

A notification method may be reasonable and constitutional if employing the method is "reasonably certain to inform those affected," or, when circumstances do not reasonably permit such notice, if the method employed is not substantially less likely to provide notice than other customary alternative methods. *Mullane*, supra at 315. Notably, *Mullane* recognized that the reasonableness of a particular method could vary, depending on what information the government had. That case concerned a New York law that merely required notice by publication to inform beneficiaries of a common trust fund that the fund was subject to judicial settlement. *Id*. at 309-310. The Court held that while notice by publication was constitutionally sufficient with regard to beneficiaries whose interests or addresses were unknown, notice by publication was insufficient for beneficiaries whose names and addresses were known by the government. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id*. at 318. Notice by publication was inadequate in the case of known beneficiaries "because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id*. at 319.

Moreover, even if a statutory scheme is reasonably calculated to provide notice in the ordinary case, the United States Supreme Court has nevertheless "required the government to consider unique information about an intended recipient. . . ." *Jones*, supra at 230. The Court has explained that the " 'notice required will vary with [the] circumstances and conditions.' " *Id*. at 227 (citation omitted). The government's knowledge that its attempt at notice has failed is a " 'circumstance and condition' that varies the 'notice required.' " *Id*. (citations omitted). In such a case, the adequacy of the government's efforts will be evaluated in light of the actions it takes after it learns that its attempt at notice has failed. The Court explained, "[W]hen mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at 225. "What steps are reasonable in response to new information depends upon what the new information reveals." *Id*. at 234. For example, when certified mail is returned as "unclaimed," it means either that the addressee still lives at that address but was not home when the mail was delivered and did not retrieve it, or that the addressee no longer resides at that address. *Id*. Under those circumstances, a reasonable follow-up measure aimed at the first possibility would be to resend the notice by regular mail. *Id*. Reasonable follow-up measures directed at the possibility that the addressee had moved would be to post notice on the front door or to send notice addressed to "occupant." *Id*. at 235. Although the government must take reasonable additional steps to notify the owner, it is not required to go so far as to "search[ ] for [an owner's] new address in the . . . phonebook and other government records such as income tax rolls." *Id*. at 235-236. Ultimately, the Court did not prescribe the form of service that should be adopted in any given case, but simply observed that for purposes of its holding—which found the state's follow-up

actions insufficient—it sufficed that additional reasonable steps were available for the state to employ before taking the property. *Id*. at 238. [Alterations in original.]

In *2 Crooked Creek, LLC v Cass Co Treasurer*, 507 Mich 1, 9-10; 967 NW2d 577 (2021), our Supreme Court explained the authorization under the GPTA of governmental unit action upon real property with tax delinquency:

> The GPTA authorizes a foreclosing governmental unit to seize tax-delinquent property through foreclosure and to then sell it to recoup unpaid real-property taxes, penalties, interest, and fees. Before the foreclosure judgment is entered, the GPTA provides various procedural safeguards to afford those with an interest in the property notice of the foreclosure by mail, by publication, and by a personal visit to the property,[2] and it provides an opportunity to be heard via a show-cause hearing and a judicial-foreclosure hearing.[3] Once the foreclosure judgment enters and the redemption and appeal periods expire, fee simple title to the property vests in the foreclosing governmental unit.[4] Once entered, circuit courts generally may not alter a judgment of foreclosure.

Under the GPTA, "all property returned for delinquent taxes, and upon which taxes, interest, penalties, and fees remain unpaid after the property is returned as delinquent to the county treasurers of this state under this act, is subject to forfeiture, foreclosure, and sale for the enforcement and collection of the delinquent taxes . . . ." MCL 211.78a(1). "On March 1 in each year, taxes levied in the immediately preceding year that remain unpaid shall be returned as delinquent for collection . . . [and] property delinquent for taxes levied in the second year preceding the forfeiture under section 78g or in a prior year to which this section applies shall be forfeited to the county treasurer for the total of the unpaid taxes, interest, penalties, and fees for those years as provided under section 78g." MCL 211.78a(2).

MCL 211.78b and MCL 211.78c require, among other things, that the county treasurer send notices by first-class mail (address correction requested) to the person to whom a tax bill for property returned for delinquent taxes was last sent or to the person identified as the owner of the property, informing the person of the unpaid delinquent taxes, interest, penalty, and fees, plus the consequence of forfeiture if not paid by March 31, including a judgment of foreclosure that will vest title to the property in the foreclosing governmental unit. The notice must also state that the person will have a right of redemption that will expire on the March 31 succeeding the entry of a judgment of foreclosure. In this case, the record indicates that Wexford sent Midway, care of McCord, by first-class mail to the 1989 South Mackinaw Trail address, the two notices required

---

[2] In a footnote, the Court cited MCL 211.78i and further stated: "Of course, the GPTA also requires that various notices be sent to the property owner when taxes are returned as delinquent and when the property is forfeited to the county treasurer. See MCL 211.78a through MCL 211.78c; MCL 211.78f."

[3] Citing MCL 211.78j; MCL 211.78k; and MCL 211.78k(5)(f).

[4] Citing MCL 211.78k(6).

under MCL 211.78b and 211.78c containing the requisite information and warnings of the consequences of nonpayment of the 2018 and previous years' delinquent taxes. Nothing in the record establishes that these notices were not delivered.[5]

Under MCL 211.78f(1), the county treasurer must send notice by certified mail, return receipt requested, "to the person to whom a tax bill for property returned for delinquent taxes was last sent" that states the date on which delinquent property with unpaid taxes will be forfeited and subject to foreclosure proceedings that identifies the unpaid delinquent taxes, interest, penalties, and fees due on the property and the consequences of nonpayment by March 31 with a statement of the person's redemption rights after entry of a judgment of foreclosure. The record indicates that Wexford sent Midway by certified mail notice of pending forfeiture and by first-class mail to Midway at the 1989 South Mackinaw Trail address. Wexford admitted in the lower court proceedings that the certified mail notices were returned as undelivered so it sent the notice by first-class mail.

Wexford also recorded a certificate of forfeiture in the county register of deeds as required under MCL 211.78g(2). Although the petition for foreclosure is not part of the lower court record in this case, there is no dispute that Wexford filed a petition for foreclosure in the circuit court that identified the 1989 South Mackinaw Trail property as subject to foreclosure pursuant to MCL 211.78h.

MCL 211.78i(1), (2), and (6) require governmental units to determine persons with interest in property subject to foreclosure who are entitled to notice, by reviewing land title records in the county register of deeds, tax records in the offices of the local assessor, local treasurer, and county treasurer, and determine the address reasonably calculated to apprise such persons of the show cause hearing required under MCL 211.78j and the foreclosure hearing required under MCL 211.78k. MCL 211.78i(4) specifies that, if the foreclosing governmental unit discovers any discrepancy or deficiency in providing notice, it must take reasonable steps in good faith to correct the deficiency not later than 30 days before the show cause hearing. MCL 211.78i(2), in relevant part, further provides that, if a deficiency in notice under Subpart (4) is determined for a business entity, then the applicable address to which the notice must be sent may be determined by searching business entity records filed with LARA. The record in this case indicates that Wexford, through Title Check, LLC, sent a notice of show cause hearing and judicial foreclosure hearing to Midway care of McCord by certified mail to the 1989 South Mackinaw Trail address as required under MCL 211.78i. The record also confirms that the business entity records filed with LARA identified Midway's registered mailing address as 1989 South Mackinaw Trail, Cadillac, Michigan, and McCord, Midway's resident agent, as having that same address. Title Check, LLC's general manager filed with the county clerk an affidavit of service in which he attested that he sent by certified mail, return receipt requested and by first-class mail Wexford's notice of show

---

[5] MCL 211.78e requires the county treasurer to prepare a list based on the records contained in the local assessor's, local treasurer's, and county treasurer's offices, of all delinquent properties subject to forfeiture, foreclosure, and sale, identifying the addresses, owners, lien holders, and persons entitled to notice of delinquent taxes. The record does not indicate any dispute in this regard.

cause hearing and judicial foreclosure hearing to the listed addresses which included the subject property.

MCL 211.78i(3) requires that the foreclosing governmental unit or its representative must make a personal visit to the forfeited property to ascertain if the property is occupied, and if so attempt to personally serve the occupant and, among other things, inform the person of the foreclosure, the requirement to vacate the premises if the delinquent taxes, interest, penalties, and fees are not paid, and by what time such must be paid. The record indicates that, on August 17, 2020, Wexford's representative personally visited the property and found it to be unoccupied and abandoned. The record further reflects that Wexford posted notice on the door of the building at the 1989 South Mackinaw Trail property in compliance with MCL 211.78i(3)(d). Wexford also had its agent, Title Check, LLC, publish notice of show cause hearing and judicial forfeiture hearing in the Cadillac News as required under MCL 211.78i(5).

Our Supreme Court has held that newspaper publication is a formality that is unlikely to provide actual notice. *Dow v State*, 396 Mich 192, 207-208; 240 NW2d 450 (1976). However, even if notice by publication would not by itself be sufficient, when considered with the notices sent by certified and first-class mail, the recorded certificate of forfeiture, and the posted notice, the record demonstrates that Wexford provided Midway constitutionally sufficient notice to satisfy due process. *Sidun*, 481 Mich at 509; *Mullane*, 339 US at 314.

Wexford submitted to the trial court a mail tracking report that listed the certified mailings of notices and first-class mailings of notices to Midway care of McCord to the 1989 South Mackinaw Trail address, a first-class letter sent to the occupant of the 1989 South Mackinaw Trail address, and the various mailings sent to the land contract vendor. The tracking report indicated that certified mailings sent to the 1989 South Mackinaw Trail address were returned as undeliverable. The tracking report, however, does not indicate that the first-class mailings were not delivered or returned. Service by mail requires placing the document "in a sealed envelope with first-class postage fully prepaid, addressed to the person to be served, and depositing the envelope and its contents in the United States mail. Service by mail is complete at the time of mailing." MCR 2.107(C)(3). Any document properly addressed and placed in the mail is presumed to reach its destination. *Crawford v Mich*, 208 Mich App 117, 121; 527 NW2d 30 (1994), citing *Stacey v Sankovich*, 19 Mich App 688, 694; 173 NW2d 225 (1969). The presumption may be rebutted, *Stacey*, 19 Mich App at 694, but the mere denial of service is not sufficient to rebut the presumption. See *Ins Co of North America v Issett*, 84 Mich App 45, 49; 269 NW2d 301 (1978). Although plaintiffs argue that the notices sent by first-class mail were not delivered, plaintiffs offer no evidence that rebuts the presumption that the mailed notices were delivered. Further, from the evidence presented to the trial court, we conclude that Midway and SSI representatives did not visit the property for extended periods and failed to respond to the notice posted on the door of the building on the property.

Plaintiffs argue that Wexford should have searched, found, and used another address for Midway because it owned another property. Our Supreme Court, however, has explained that due process does not require that Midway received actual notice, only that Wexford took reasonable additional steps to notify it. *Sidun*, 481 Mich at 510. Further, "[a]lthough the government must take reasonable additional steps to notify the owner, it is not required to go so far as to 'search[ ] for [an owner's] new address in the . . . phonebook and other government records such as income

-9-

tax rolls.' " *Id.* at 511, quoting *Jones*, 547 US at 235-236. Respecting McCord, Midway's registered agent whose address filed with LARA was Midway's registered address, Wexford could and did properly send notice to Midway care of McCord at that address. Plaintiffs cite no authority that required Wexford to search, find, and use another address for McCord to send Midway, the owner of the subject property, any notice. Nothing in the record indicates that McCord had an ownership interest in the subject property. Midway purchased the property by land contract from the land contract vendor. McCord was a member of Midway, but the property belonged to the LLC, not the individual member(s). An LLC member "has no interest in specific limited liability company property." MCL 450.4504(2). McCord, therefore, could not legitimately claim an interest in the property or entitlement to personal notice. Wexford had no obligation to give him notice personally other than as the registered agent of Midway. Plaintiffs appear to disregard this and assert without citation to authority that Wexford had an obligation to search, find, and use an address for McCord and provide him notice. Although the judgment of foreclosure identified McCord as an additional owner, as a matter of fact and law, he could not claim that status, and the judgment's incorrect reference did not grant him the right to claim such status.

The record establishes that Wexford complied with the requirements of the GPTA by providing notice and alternative notice to Midway, the owner of the property and taxpayer, by the specified statutory means, at Midway's registered address, and to Midway's registered agent at his registered address. Although the certified mailings were returned as undeliverable, no evidence establishes that Wexford's numerous first-class mailings of notices were not delivered.[6] Wexford

---

[6] Among other things, as exhibits to its summary disposition brief, Wexford attached: (1) a notice of March 31, 2021 payment deadline by which Midway had to pay its delinquent taxes or face foreclosure mailed to Midway care of McCord at 1989 South Mackinaw Trail, Cadillac, Michigan; (2) a delinquent tax notice for tax year 2018 warning of forfeiture and foreclosure if not paid by March 31, 2020; (3) a notice of pending forfeiture of property for unpaid real property taxes specifying the amounts due for the delinquent taxes identifying Midway as the taxpayer and 1989 South Mackinaw Trail, Cadillac, Michigan as the affected property mailed to Midway at that address; (4) a certificate of forfeiture of real property recorded in the Wexford County Register of Deeds on April 8, 2020; (5) a notice of a show cause hearing and judicial foreclosure sent to Midway care of McCord at 1989 South Mackinaw Trail, Cadillac, Michigan; (6) an Affidavit of Notice of Forfeited Property-Personal Visit of a Wexford representative attesting that on August 17, 2020 the person visited 1989 South Mackinaw Trail, Cadillac, Michigan, and a photo of the notice posted on the property; (7) an Affidavit of Preprint Distribution indicating that the Cadillac News distributed circulars in six zip code areas; (8) a notice of a show cause hearing and judicial foreclosure that listed Midway and the amount of taxes owed and identified 1989 South Mackinaw Trail, Cadillac, Michigan as an affected property; (9) Title Check, LLC's manager's affidavit of service of notice of a show cause hearing and judicial foreclosure hearing with a mail tracking report indicating that a certified letter and letters sent by first-class mail were sent to Midway care of McCord at 1989 South Mackinaw Trail, Cadillac, Michigan; (10) a land contract indicating Midway's purchase of the property executed by McCord; (11) a LARA web search report indicating Midway's address as 1989 South Mackinaw Trail, Cadillac, Michigan and McCord as its resident agent.

-10-

also visited the property in an attempt to personally serve the property owner or occupant and assess whether the property had been abandoned. No owner or occupant was present and the property appeared abandoned, so Wexford's representative posted the requisite notice on the property. Wexford recorded the forfeiture certification in the county register of deeds. Wexford also published notice in the local newspaper. All of these steps served to apprise Midway of its tax delinquency, the consequences of such, including forfeiture of the property, foreclosure, and sale of the property to satisfy the delinquency, and of Midway's rights to redeem. These demonstrate that Wexford satisfied the statutory requirements and took reasonable steps to apprise persons with an interest in the subject property of the rights and opportunities available to such persons to protect interests in the property. Wexford properly identified Midway as the owner with an interest in the subject property and provided the requisite notices to Midway.[7]

For these reasons, Wexford performed constitutionally sufficient reasonable additional steps to provide Midway with the notice necessary to satisfy the minimum constitutional requirements of due process. *Sidun*, 481 Mich at 509; *Mullane*, 339 US at 314. Plaintiffs' contention that Wexford failed to provide them notice lacks evidentiary support. Plaintiffs' claim that Wexford deprived them of due process, therefore, fails.

We hold that Wexford performed constitutionally sufficient reasonable additional steps to provide Midway with the notice necessary to satisfy the minimum constitutional due-process requirements. The trial court properly analyzed the record evidence and correctly concluded that Wexford did not deprive plaintiffs of due process. The trial court, therefore, did not err by granting Wexford summary disposition.

## B. EXCESS PROCEEDS

Plaintiffs next argue that the trial court erred by granting Wexford summary disposition because Wexford improperly retained the excess proceeds from the tax foreclosure sale of the subject property by failing to provide constitutionally sufficient notice to Midway of the foreclosure and sale which deprived Midway of the opportunity to make a claim for those excess proceeds. Plaintiffs contend that Wexford should have done more by sending notices to McCord personally at his addresses. Wexford, however, had no obligation to search for addresses for McCord or send notices to him at any address other than Midway's registered address at the subject property. Because Wexford did not deprive Midway of due process, plaintiffs' argument fails.

As explained previously, Wexford provided Midway constitutionally sufficient notice of the tax delinquency and resulting tax forfeiture, foreclosure, sale, and Midway's redemption rights. Further, plaintiffs produced nothing to rebut the presumption that the first-class mailings were

---

[7] The record from the judicial foreclosure proceedings is not part of the lower court record. Nevertheless, the parties do not dispute that Wexford filed the requisite petition under section 78h, proof of service of the notice of the show cause hearing under section 78j, proof of service of the notice of the foreclosure hearing under section 78k, and proof of the personal visit to the property and publication under section 78i, and the record reflects that the circuit court entered a final judgment of foreclosure on February 19, 2021, pursuant to MCL 211.78k(5) which specified the requisite information.

delivered and instead relied solely on conclusory allegations. Having met its statutory and constitutionally sufficient notice requirements, Wexford had no obligation to do more than what it did. As explained in *Petersen Financial, LLC v Kentwood*, 337 Mich App 460, 468-469; 976 NW2d 691 (2021),

> When seeking foreclosure, the foreclosing governmental unit must file a petition of foreclosure in circuit court, requesting "that a judgment be entered vesting absolute title to each parcel of property in the foreclosing governmental unit, without right of redemption." MCL 211.78h(1). See also *Rafaeli, LLC*, 505 Mich at 445. After filing of the petition and a judicial foreclosure hearing, a judgment of foreclosure must be entered by March 30. *Rafaeli, LLC*, 505 Mich at 445. "Unless the delinquent taxes, interest, penalties, and fees are paid on or before March 31, fee simple title to the property vests absolutely in the foreclosing governmental unit without any further redemption rights available to the delinquent taxpayer." *Id*. "Thereafter, the foreclosing governmental unit's title to the property is not subject to any recorded or unrecorded lien." *Id*.

In this case, Wexford seized the subject property under the GPTA, and the circuit court entered a judgment of foreclosure for the satisfaction of all taxes due and payable up to the date of the foreclosure hearing. See MCL 211.78h; see also MCL 211.78a(1). Under MCL 211.78k(6), fee simple title vested absolutely in Wexford at the time of foreclosure, extinguishing all liens and existing interests in the property except as provided in MCL 211.78k(5)(c) and (e). Wexford, therefore, could sell the property as permitted under MCL 211.78m. Wexford sold the property at auction to the highest bidder, Kearney, on August 2, 2021, over five months after entry of the judgment of foreclosure. MCL 211.78m(8) required Wexford to use the sale proceeds to reimburse the county's tax revolving fund for all taxes, interest, penalties, and fees associated with the property, and cover fees incurred in connection with, among other things, the forfeiture, foreclosure, and sale of the property, and pay claimants of the remaining proceeds ordered under MCL 211.78t. This statutory provision provides "the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state." MCL 211.78t(11).

MCL 211.78t(12) provides:

> As used in this section:

> (a) "Claimant" means a person with a legal interest in property immediately before the effectiveness of a judgment of foreclosure of the property under section 78k who seeks pursuant to this section recognition of its interest in any remaining proceeds associated with the property.

> (b) "Remaining proceeds" means the amount equal to the difference between the amount paid to the foreclosing governmental unit for a property due to the sale or transfer of the property under section 78m and the sum of all of the following:

> (*i*) The minimum bid under section 78m.

(*ii*) All other fees and expenses incurred by the foreclosing governmental unit pursuant to section 78m in connection with the forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property not included in the minimum bid.

(*iii*) A sale commission payable to the foreclosing governmental unit equal to 5% of the amount paid to the foreclosing governmental unit for the property.

MCL 211.78t, in relevant part, specifies the claim procedure as follows:

(1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under section 78m, subject to the following:

(a) For foreclosed property transferred or sold under section 78m after July 17, 2020, the notice of intention must be submitted pursuant to subsection (2).

* * *

(2) For foreclosed property transferred or sold under section 78m after July 17, 2020, by the July 1 immediately following the effective date of the foreclosure of the property, a claimant seeking remaining proceeds for the property must notify the foreclosing governmental unit using a form prescribed by the department of treasury. The department of treasury shall make the form available to the public on an internet website maintained by the department of treasury. A foreclosing governmental unit shall make the form available to the public on an internet website maintained by the foreclosing governmental unit if the foreclosing governmental unit maintains an internet website. Notice to a foreclosing governmental unit under this subsection must be by personal service acknowledged by the foreclosing governmental unit or by certified mail, return receipt requested. The notice must be notarized and include all of the following:

(a) The name of the claimant.

(b) The telephone number of the claimant.

(c) The address at which the claimant wants to receive service.

(d) The parcel identification number of the property, and, if available, the address of the property.

(e) An explanation of the claimant's interest in the property.

(f) A description of any other interest in the property immediately before the foreclosure under section 78k held by other persons and known by the claimant, including a lien or a mortgage.

(g)  A sworn statement or affirmation by the claimant that the information included in the notice is accurate.

(3)   Not later than the January 31 immediately succeeding the sale or transfer of the property under section 78m, the foreclosing governmental unit shall send by certified mail, return receipt requested, a notice in a form prescribed by the department of treasury to each claimant that notified the foreclosing governmental unit pursuant to subsection (2). . . .

\* \* \*

(6)  For a claimant seeking remaining proceeds from the transfer or sale of a foreclosed property transferred or sold under section 78m pursuant to this subsection, the claimant must notify the foreclosing governmental unit using the form prescribed by the department of treasury under subsection (2) in the manner prescribed under subsection (2) by the March 31 at least 180 days after any qualified order.  By the following July 1, the foreclosing governmental unit shall provide each claimant seeking remaining proceeds for the property and notifying the foreclosing governmental unit under this subsection with a notice relating to the foreclosed property in the form and manner provided under subsection (3).  To claim any applicable remaining proceeds to which the claimant is entitled, the claimant must file a motion with the circuit court in the same proceeding in which a judgement of foreclosure was effective under section 78k by the following October 1. . . .

In this case, Midway never submitted a notice of intention to claim an interest in the remaining proceeds from the transfer or sale of the foreclosed property as required under MCL 211.78t.  Midway never notified Wexford, the foreclosing governmental unit, of its claim.  The statute plainly provides that the procedure under MCL 211.78t is the exclusive means by which a claimant may seek the remaining proceeds from the sale of a foreclosed property.  Wexford had no obligation to plaintiffs respecting the disposition of the remaining proceeds because Midway failed to timely do as required under MCL 211.78t.  Accordingly, the trial court did not err by granting summary disposition to Wexford on plaintiffs' claim respecting the excess proceeds. The trial court correctly determined that Wexford properly retained the proceeds because plaintiffs failed to timely notify it of any claim under MCL 211.78t.

Plaintiffs argue that the trial court erred by granting Kearney summary disposition of their wrongful eviction claim because they contend that SSI possessed the premises under a lease and Kearney wrongfully evicted SSI and violated MCL 600.2918(2)(b) by disposing of SSI's property, and could not claim that he acted in good faith.  Plaintiffs' argument lacks merit.

MCL 600.2918 states, in relevant part:

(2)  Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner is entitled to recover the amount of his or her actual damages or $200.00, whichever is greater, for each occurrence and, if possession has been lost, to recover possession.  Subject to subsection (3),

-14-

unlawful interference with a possessory interest includes 1 or more of the following:

* * *

(b) Removal, retention, or destruction of personal property of the possessor.

* * *

(3) An owner's actions do not unlawfully interfere with a possessory interest if any of the following apply:

* * *

(c) The owner . . . believes in good faith that the tenant has abandoned the premises, and after diligent inquiry has reason to believe the tenant does not intend to return, and current rent is not paid.

Under the GPTA, a governmental unit may seize and sell real property to "satisfy the unpaid delinquent real-property taxes as well as any interest, penalties, and fees associated with the foreclosure and sale of [the property]." *Rafaeli, LLC*, 505 Mich at 474. As explained in *Petersen Financial, LLC*, 337 Mich App at 498:

> When seeking foreclosure, the foreclosing governmental unit must file a petition of foreclosure in circuit court, requesting "that a judgment be entered vesting absolute title to each parcel of property in the foreclosing governmental unit, without right of redemption." MCL 211.78h(1). See also *Rafaeli, LLC*, 505 Mich at 445. After filing of the petition and a judicial foreclosure hearing, a judgment of foreclosure must be entered by March 30. *Rafaeli, LLC*, 505 Mich at 445. "Unless the delinquent taxes, interest, penalties, and fees are paid on or before March 31, fee simple title to the property vests absolutely in the foreclosing governmental unit without any further redemption rights available to the delinquent taxpayer." *Id*. "Thereafter, the foreclosing governmental unit's title to the property is not subject to any recorded or unrecorded lien." *Id*.

MCL 211.78k defines the consequences of tax foreclosure in relevant part as follows:

> (5) The circuit court shall enter final judgment on a petition for foreclosure filed under section 78h at any time after the hearing under this section but not later than the March 30 immediately succeeding the hearing with the judgment effective on the March 31 immediately succeeding the hearing for uncontested cases or 10 days after the conclusion of the hearing for contested cases. All redemption rights to the property expire on the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case 21 days after the entry of a judgment foreclosing the property under this section. The circuit court's judgment must specify all of the following:

(a)  The legal description and, if known, the street address of the property foreclosed and the forfeited unpaid delinquent taxes, interest, penalties, and fees due on each parcel of property.

(b)  That fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit, except as otherwise provided in subdivisions (c) and (e), without any further rights of redemption, if all forfeited delinquent taxes, interest, penalties, and fees, which delinquent taxes, interest, penalties, and fees may be reduced by the foreclosing governmental unit in accordance with section 78g(8), are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

(c)  That all liens against the property, including any lien for unpaid taxes or special assessments, except future installments of special assessments and liens recorded by this state or the foreclosing governmental unit under the natural resources and environmental protection act, 1994 PA 451, MCL 324.101 to 324.90106, are extinguished, if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

(d)  That, except as otherwise provided in subdivisions (c) and (e), the foreclosing governmental unit has good and marketable fee simple title to the property, if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

(e)  **That all existing recorded and unrecorded interests in that property are extinguished**, except a visible or recorded easement or right-of-way, private deed restrictions, interests of a lessee or an assignee of an interest of a lessee under a recorded oil or gas lease, interests in oil or gas in that property that are owned by a person other than the owner of the surface that have been preserved as provided in section 1(3) of 1963 PA 42, MCL 554.291, interests in property assessable as personal property under section 8(g), or restrictions or other governmental interests imposed under the natural resources and environmental protection act, 1994 PA 451, MCL 324.101 to 324.90106, if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.  [Emphasis added.]

(f)  A finding that all persons entitled to notice and an opportunity to be heard have been provided that notice and opportunity.  **A person is considered to have been provided notice and an opportunity to be heard if the foreclosing**

**governmental unit followed the procedures for provision of notice by mail, for visits to forfeited property, and for publication under section 78i** . . . . [Emphasis added.]

\* \* \*

(6) **Except as otherwise provided in subsection (5)(c) and (e), fee simple title to property set forth in a petition for foreclosure filed under section 78h on which forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section,** or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section, **will vest absolutely in the foreclosing governmental unit, and the foreclosing governmental unit will have absolute title to the property,** including all interests in oil or gas in that property except the interests of a lessee or an assignee of an interest of a lessee under an oil or gas lease in effect as to that property or any part of that property if the lease was recorded in the office of the register of deeds in the county in which the property is located before the date of filing the petition for foreclosure under section 78h, and interests preserved as provided in section 1(3) of 1963 PA 42, MCL 554.291. The foreclosing governmental unit's title is not subject to any recorded or unrecorded lien and must not be stayed or held invalid except as provided in subsection (7) or (9). [Emphasis added.]

In this case, Midway failed to pay the property taxes for multiple years, Wexford sent tax delinquency notices that were unheeded resulting in the tax forfeiture of the property, Wexford commenced a tax foreclosure action, gave Midway notice of the foreclosure action, visited the property and determined that it had been abandoned and unoccupied, posted notice on the property, gave notice by publication, the circuit court entered a judgment of foreclosure, Midway failed to redeem the property or appeal the judgment, and title vested absolutely in fee simple in the county treasurer as the foreclosing governmental unit. Under MCL 211.78k(5)(e) and (6), Wexford took fee simple title to the property free and clear of all recorded and unrecorded interests in the property, including SSI's oral lease from Midway. See generally, *Petersen Financial*, LLC, 337 Mich App at 499-500, 506. MCL 211.78k(5)(e) provides no exception for a commercial lease like SSI's.

After Wexford obtained title to the property, Midway had no interest, no possessory right, nor any right to enter the property, and SSI's lease interest in the property was extinguished by operation of law. Further, Wexford determined that the property had been abandoned. The record indicates that neither Midway nor SSI visited the property for a significant period. Further, evidence indicates that the building had fallen into disrepair and the grass on the premises had not been cut for a significant period as well. In submissions to the trial court plaintiffs asserted that they often and regularly visited the property, but those assertions lacked evidentiary support. The evidence in the record demonstrates that it is doubtful that any representative of plaintiffs in fact visited the property. One could not do so without observing the notice of the foreclosure show cause hearing and the judicial foreclosure hearing prominently posted on the subject property's building's doorway. The record contains a photograph of the notice posted there. Plaintiffs do not concede that the posted notice provided Midway notice of the tax forfeiture, show cause

-17-

hearing, and judicial foreclosure hearing proceedings. Nevertheless, the trial court could reasonably conclude from the record evidence that plaintiffs did not visit the property as claimed. The trial court properly observed that plaintiffs failed to provide any evidence that supported their claimed visits to the property "regularly and often" because they submitted no proof of any date on which that happened. The record evidence supports Wexford's conclusion that the property had been abandoned and unoccupied.

Evidence in the record indicates that Wexford advertised the property as abandoned for the tax foreclosure sale and that advertisement prompted Kearney to bid for the property. Kearney purchased the property at the tax foreclosure sale as the highest bidder. The record indicates that, after the tax foreclosure sale, Kearney entered the property and began cleaning it. The record does not reveal what arrangement, if any, Kearney had with Wexford after the tax foreclosure sale respecting entry and taking possession of the property from the date of the sale to the date when Wexford executed the quitclaim transferring the property to Kearney. The trial court could reasonably infer from the record, as Kearney contends, that on August 14, 2021, when McCord confronted Kearney on the property and called the police, the responding officer learned from Wexford that Kearney purchased the property at the tax foreclosure sale and had an interest in the property superior to McCord, and under the circumstances the officer could remove McCord from the premises. The record indicates that the county treasurer conveyed the property to Kearney by a quitclaim deed recorded August 17, 2021. "A quitclaim deed conveys any and all right, title, and interest that a grantor has in the lands described in the deed." *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 630; 752 NW2d 479 (2008) (citation omitted). Here, Wexford had absolute fee simple title and conveyed its interest to Kearney. Kearney therefore, took full title to the property under the quitclaim deed which conveyed to him all rights, title and interest held by Wexford, free and clear of all recorded and unrecorded interests in the property, including SSI's oral lease from Midway which had been extinguished months before by the entry of the judgment of foreclosure and Midway's failure to redeem the property. Regardless whether Wexford conveyed the property to Kearney before August 14, 2021, when McCord visited the property, Kearney had an ownership interest in the property awaiting conveyance by the deed which ultimately granted him full title free of any interests including SSI's lease. Neither Wexford nor Kearney, therefore, wrongfully evicted SSI since SSI had no viable possessory interest in the property, the lease having been extinguished by operation of law. Moreover, evidence presented to the trial court supported Kearney's understanding that the property had been abandoned.

To establish abandonment, a party is required to show "both an intent to relinquish the property and external acts putting that intention into effect." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003). Considering all of the evidence in the record, Wexford had good reason to conclude that the property and its contents had been abandoned. Midway had failed to pay property taxes for multiple years. Despite Wexford's mailing notices, posting notice on the property, publishing notice of tax foreclosure, and visiting the property, neither Midway nor SSI did anything. Wexford's representative visited the property and found it abandoned and unoccupied. When Kearney purchased and went to the property it had not been kept in a manner demonstrating occupancy and the building had fallen into considerable disrepair. Midway's lack of care for the condition of the property, failure to maintain the premises, failure to pay the taxes, failure to do anything respecting the tax foreclosure and sale, and failure to redeem the property, are all indicia demonstrating the owner's intent to relinquish the property coupled with external acts putting that intent into effect. Therefore, Wexford could conclude that the

premises were abandoned and unoccupied, and Kearney, in good faith, could consider the same. In response to Kearney's motion, plaintiffs submitted no evidence of the terms of the purported oral lease, no evidence of actual use or occupancy of the premises, no evidence of SSI's payment of rent to anyone before or after the tax foreclosure, or any evidence of any action taken following the entry of judgment of foreclosure during the redemption period or after, respecting the property or any personal property left there.

The trial court's order indicates that it considered the record evidence and concluded that Midway and SSI abandoned the premises and the property contained therein. The court remarked that Kearney moved for summary disposition of SSI's claim under MCR 2.116(C)(10) and presented evidence of his good-faith understanding that the property had been abandoned, his purchase of the property at the tax foreclosure sale, and grant of title by quitclaim deed from Wexford. The court noted that, in response to Kearney's motion, SSI had to establish that it could sustain its claim by presenting admissible evidence demonstrating Kearney's liability. The court stated that, for their wrongful eviction claim under MCL 600.2918(2), plaintiffs had to prove a "tenant" in possession. The court concluded that sufficient evidence indicated that the premises appeared abandoned because no one paid the taxes, no one occupied the premises, the property had been forfeited without objection and foreclosed without objection, sold without objection, and no one redeemed the property. The trial court determined that the evidence established that Kearney had no reason to know of the oral lease or that SSI had any interest in the property, and under MCL 600.2918(3), Kearney had a reasonable, good-faith belief that the property had been abandoned. In actuality, neither Wexford became SSI's landlord when Wexford obtained fee simple title to the property, nor did Kearney become SSI's landlord; no lease existed because all recorded and unrecorded interests were extinguished as a matter of law.

We hold that the trial court properly granted Kearney summary disposition of plaintiffs' wrongful eviction claim because the property was abandoned, a judgment of foreclosure entered, Midway did not redeem the property, and under MCL 211.78k(5)(e) and (6), Wexford took absolute fee simple title to the property free and clear of all recorded and unrecorded interests in the property, including SSI's oral lease from Midway, and Kearney later took the property in absolute fee simple title, free of SSI's extinguished lease interest.

## C. PLAINTIFFS' CONVERSION AND CLAIM AND DELIVERY CLAIMS

Plaintiffs lastly argue that the trial court erred by granting Kearney summary disposition of their conversion and claim and delivery claims. We disagree.

In their complaint, plaintiffs alleged that Kearney committed common-law conversion and statutory conversion in violation of MCL 600.2919a. "Common law conversion . . . consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 13-14; 779 NW2d 237 (2010) (quotation marks and citations omitted). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id*. at 14 (citations omitted). Unlike common-law conversion, statutory conversion is governed by MCL 600.2919a(1), which provides:

A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

In *Aroma Wines & Equip, Inc v Columbian Dist Servs, Inc*, 497 Mich 337, 348-353; 871 NW2d 136 (2015), our Supreme Court considered the scope of Michigan's common-law conversion and stated that "Michigan law's understanding of conversion shifted away from requiring an additional showing that the conversion occurred for the other person's 'own use' and toward allowing a property owner to recover for any act of dominion inconsistent with that person's rights in that property." *Id*. at 354. "By enacting MCL 600.2919a, the Legislature intended to create a separate statutory cause of action for conversion 'in addition to any other right or remedy' a victim of conversion could obtain at common law." *Id*. at 340 (footnote omitted). The Court concluded that "the Legislature's inclusion of the phrase 'to the other person's own use' in § 2919a(1)(a) indicates its intent to limit § 2919a(1)(a) to a subset of common-law conversions in which the common-law conversion was to the other person's 'own use.' " *Id*. at 355, quoting MCL 600.2919a(1)(a). To be entitled to statutory treble damages, a plaintiff must prove that the defendant converted the property to the defendant's "own use," which means that proof must establish that the defendant "employed the converted property for some purpose personal to that defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id*. at 340. Obviously, to establish a claim of conversion under either common-law conversion or statutory conversion, the plaintiff must prove the existence of the property and that the defendant actually took possession of such property.

The claim formerly known as "replevin" is now known as "claim and delivery." *Whitcraft v Wolfe*, 148 Mich App 40, 44 n 1; 384 NW2d 400 (1985). Claim and delivery seeks the return of wrongfully held property and damages for the period of wrongful detention. MCR 3.105(A). An action for claim and delivery applies only to tangible "goods or chattels," MCL 600.2920(1), not to intangible property. See *Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 714; 583 NW2d 232 (1998). When real property has been vacated and physical assets are left behind or abandoned on the property, one who thereafter properly enters the property and maintains possession is not liable in an action for claim and delivery under MCL 600.2920. *Id.* at 713-714.

In this case, as explained previously, Wexford became vested with absolute fee simple title to the property. The trial court analyzed the record evidence and determined that plaintiffs offered nothing more than speculation and provided no substantive evidence that anyone removed, destroyed, or damaged any property. Further, the trial court properly analyzed the record evidence and determined that SSI failed and could not establish what property remained on the land, who removed it, or when such was removed. At minimum, plaintiffs had sufficient time to remove all

personal property from the premises between the time of the show cause hearing and the judicial foreclosure hearing, and thereafter until the expiration of the redemption period. Plaintiffs presented no evidence of any attempt to seek the recovery from Wexford of any personal property remaining on the subject property before title fully vested in Wexford, or to the time when Wexford sold the property to Kearney at the foreclosure sale. The trial court correctly ruled that plaintiffs abandoned the property. Plaintiffs retained no possessory interest in the subject property.

We hold that the interest or right plaintiffs had in the personal property did not survive expiration of the redemption period, and having abandoned the property, once Kearney purchased the property from Wexford, he became owner of the property and all its contents. Plaintiffs failed to show that Kearney wrongfully exercised dominion and control over SSI's personal property, and under the circumstances of this case he did not. Considering the series of events and failures, as a matter of law, plaintiffs abandoned the personal property they left behind. Once abandoned, it was too late to try to reclaim rights to the property. The trial court correctly discerned from the record that no genuine issue of material fact existed that conversion or unlawful detention of property had occurred. Plaintiffs, therefore, had no viable action for conversion or claim and delivery. The trial court did not err by granting Kearney summary disposition of plaintiffs' claims.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates